UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22416-MC-SIMONTON

IN THE MATTER OF THE EXTRADITION
OF JACQUES PELLETIER
_____/

**EXTRADITION CERTIFICATION AND ORDER OF COMMITMENT**

The United States commenced these extradition proceedings against Jacques Pelletier (hereafter "Pelletier"), pursuant to 18 U.S.C. § 3184, the Treaty on Extradition between the United States and Portugal (hereafter "Treaty"), and the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Article 3(1). Pelletier was provisionally arrested at the request of Portugal on August 14, 2009. Pursuant to the Treaty, the Portuguese authorities presented a formal request for Pelletier's extradition, supported by appropriate documentation, which was filed on October 14, 2009 (DE # 17).

Portugal seeks Pelletier's extradition for prosecution for trafficking in drugs, in violation of Article 21 of Decree-Law nr. 15/93 of January 22, 1993. For the reasons set forth below, this Court certifies extradition.

On December 3, 2009, this Court held an extradition hearing pursuant to 18 U.S.C. § 3184. International extradition proceedings are governed by 18 U.S.C. § 3181, *et seq.* and by treaty. In applying an extradition treaty, the Court is to construe it liberally in favor of the requesting nation. *See Factor v. Laubenheimer*, 290 U.S. 293-94 (1933).

Based on consideration of the documentary evidence introduced on behalf of Portugal, Pelletier's opposition to extradition, the evidence introduced by the United States, the evidence introduced by Pelletier, the oral arguments of counsel and their written memoranda, the Court finds that the terms of the Treaty and 18 U.S.C. § 3184

have been met to extradite Pelletier.

In an extradition matter, the court does not determine the guilt or innocence of the accused, but rather determines whether the following elements have been satisfied in order to support extradition: 1) there is a valid extradition treaty between the United States and the requesting country; 2) the individual arrested is the individual sought; 3) the offense charged is extraditable; 4) the requirement of "dual criminality" is met; 5) there is probable cause to believe that the defendant committed the offenses charged; 6) the required documents have been presented, translated, and duly authenticated by the United States Consul; and 7) all other procedures have been followed.  *See generally Escobedo v. United States*, 623 F.2d 1098 (5th Cir. 1980).

The parties agree, and this Court finds that:

1.  There is a valid extradition treaty between the United States and Portugal.

2.  The required documents have been presented, translated, and duly authenticated by the United States Consul.

The issues left for the court concern Pelletier's objections that: 1) the extradition request does not prove that Pelletier is the individual sought; 2) the crime charged does not meet the "dual criminality" requirement; 3) the extradition request does not provide probable cause to believe that Pelletier committed the offense charged; and 4) Portugal's submission fails to comply with the Treaty's requirement that the required documents have been properly presented and translated.

All of Pelletier's objections lack merit, and will be reviewed in order.

**I. The extradition request proves that the Jacques Pelletier who was arrested pursuant to the extradition request and who is before the Court is the Jacques Pelletier sought in the extradition request.**

The Jacques Pelletier sought in the extradition request owns the vessel Lady

**Mary and fled from Portugal after the Portuguese Navy seized the Lady Mary and found cocaine aboard her. The extradition request contains a photocopy of Jacques Pelletier's driver's license, which contains a photograph of Jacques Pelletier (Govt. Ex. 3). The photocopy of the driver's license also contains Jacques Pelletier's date of birth and place of birth and home address (Govt. Ex. 3). The arrest warrant also contains Pelletier's home address (Govt. Ex. 9). In addition, there is a photocopy of the photograph page of Pelletier's passport (Govt. Ex. 3).**

**The undersigned finds, from examining the photocopy of the driver's license photograph in the original extradition request, as well as the lesser quality passport photograph in the original extradition request, and comparing them to Jacques Pelletier in person, that the Jacques Pelletier who was arrested pursuant to the extradition request is the Jacques Pelletier sought in the extradition request.[1] This alone would be sufficient to meet the requirement that the Jacques Pelletier who is before the Court is the Jacques Pelletier sought in the extradition request. *See Manta v. Chertoff*, 518 F.3d 1134, 1143, 1145 (9th Cir. 2008) (the identity of the person in court as the person sought to be extradited was supported, in part, by the magistrate judge's identification of the person in court as the same person in the passport photograph of the person sought to be extradited). At the hearing, Pelletier's counsel conceded that the magistrate could look at Pelletier in court and see if his appearance matched the photographs in the extradition package. However, there is also further, overwhelming, evidence that the Jacques Pelletier who is before the Court is the Jacques Pelletier who is sought in the extradition request.**

---

[1] **The undersigned recognizes that the photographs contained in the original of the extradition request are not the best quality, but they are, nevertheless, sufficient.**

On September 28, 2009, the Jacques Pelletier who is before the Court filed a motion to set conditions of release (DE # 15).  In this motion, Pelletier admitted that he owned the vessel Lady Mary, and that when the Lady Mary was seized with approximately 1,000 kilograms of cocaine, Pelletier was in Portugal.  The motion also includes a translation of a September 5, 2006 interview concerning the seizure of the Lady Mary with cocaine aboard.  The participants in the interview were Pelletier, his Canadian attorney and Corporal Eric Grenon and Gendarme Carole Giroux of the Royal Gendarmerie of Canada (DE # 15-2).  The address given by Pelletier in the interview is the same address on the passport of the Jacques Pelletier sought in the extradition request.  Also in the interview, Pelletier again conceded that he owned the Lady Mary, and that when the Lady Mary was seized with approximately 1,000 kilograms of cocaine, Pelletier was in Portugal.

Furthermore, this Court may use to prove identity the sworn statement which the Jacques Pelletier who is before the Court gave to ICE agents at Miami International Airport on August 13, 2009, and the passport photo which Pelletier used to gain entrance into the United States (Govt. Exs. 7, 8).  *LoDuca v. United States*, 1995 WL 428636 at *12 (E.D.N.Y. Jul. 7, 1995); *accord In re Extradition of Skaftouros*, 2009 WL 241492 at *12 (S.D.N.Y. Jul. 31, 2009), *citing In re Extradition of Orellana*, 2000 WL 103674 at *5 (S.D.N.Y. Jul. 26, 2000).   Pelletier's objections to the use of these exhibits are denied.[2] In the August 13, 2009 statement, the Jacques Pelletier who is before the Court stated that he owned the Lady Mary, and is a Canadian citizen (Govt. Ex. 7).  Furthermore, the

---

[2]At the hearing, Pelletier's counsel conceded that if these documents were admitted into evidence, he could not, in good faith, challenge the fact that Pelletier was both the person in the passport and the person sought in the extradition request.

government entered into evidence a copy of the photo page of the passport which the Jacques Pelletier who is before the Court used to enter the United States (Govt. Ex. 8), This contains the same information as the photo page of Pelletier's passport in the extradition request, and corroborates the information in the extradition request concerning Jacques Pelletier's identity.

Therefore, there is overwhelming evidence that the Jacques Pelletier who was arrested pursuant to the extradition request is the Jacques Pelletier sought in the extradition request.

II. **The extradition request provides probable cause to believe that Pelletier committed the offense charged.**

In an extradition proceeding, the foreign country does not have to provide evidence that the defendant is actually guilty, only evidence showing probable cause to believe that the defendant is guilty.  In *Benson v. McMahon*, 127 U.S. 457, 462-63 (1888), the Supreme Court held that the proper standard for the sufficiency of the evidence in extradition hearings is the same as in preliminary examinations; that is probable cause. *Accord Matter of Extradition of Lehming*, 951 F.Supp. 505, 513-14 (D. Del. 1996) (magistrate's function is to determine whether there is any evidence warranting the finding that there is reasonable ground to believe the accused guilty); *Castro-Bobadilla v. Reno*, 826 F.Supp. 1428, 1423 (S.D. Fla. 1993), *aff'd w/o opinion*, 28 F.3d 116 (11th Cir. 1994); *Petition of France for the Extradition of Sauvage*, 819 F.Supp. 896, 899 (S.D. Cal. 1993) (same).

The following evidence contained in the extradition request provides probable cause to believe that Pelletier committed the offense charged, i.e., trafficking in drugs. Trafficking in drugs makes it illegal for any person to distribute or import cocaine into

5

Portugal.

A.  From at least October 21, 2005, Pelletier was the beneficial owner of the Lady Mary.

B.  Pelletier was an active owner of the Lady Mary, and participated in the repair and upkeep of the Lady Mary in Portugal.

C.  On September 29, 2006, the Portuguese Navy intercepted and seized the Lady Mary in the coastal waters off Portugal.

D.  The captain of the Lady Mary, Donald Gordon, and the three crew members on the Lady Mary when it was seized, Donald Blouin, Antonio De La Rosa, and Lloyd Gordon[3], were all convicted of drug trafficking in Portugal.

E.  During the court proceeding, Donald Gordon made a statement that in early September 2006, Pelletier was having money problems, and knew that Donald Gordon was also having money problems.  Pelletier told Donald Gordon about a plan that had been given by other people.  The plan was to take the Lady Mary to sea, to meet another boat in the Atlantic Ocean, and accept the other boat's cargo and packages.  The Lady Mary would then go into Portuguese waters where it would meet another boat.  Donald Gordon assumed that the cargo was drugs.  Donald Gordon agreed to the plan and received the cargo at sea.

F.  Donald Gordon testified in the Portuguese proceedings that after the fishing boat delivering the cocaine to the Lady Mary departed, the whole crew wanted to know what happened, and he had to explain the plan to take drugs to Portugal's continental

---

[3] Lloyd Gordon is apparently Donald Gordon's uncle (DE # 26 at 12).  Donald Gordon said, in the Portuguese proceedings, that Pelletier told him not to tell Lloyd Gordon about the plan.

6

shore.

G.  Donald Gordon further testified in the Portuguese proceedings that after he told the crew about the plan, Pelletier told him to code the telephones and lock down the telephones so that the crew could not make calls off the Lady Mary.

H.  However, before the Lady Mary could offload her cargo, the Portuguese Navy seized her and found approximately 958 kg of cocaine aboard her.[4]

I.  At the time of the seizure, Pelletier was in Portugal.  He had arrived there from Montreal on September 20, 2006 and was scheduled to fly from Lisbon to Montreal on November 19, 2006.

J.  Hotel records indicate that Pelletier checked into a hotel in Lisbon on September 27, 2006 and was scheduled to leave that hotel on October 3, 2006.

K.  However, on September 30, 2006, the day after the Portuguese authorities seized the Lady Mary, Pelletier left his hotel and flew back to Canada.

L.  The Portuguese authorities conducted a forensic analysis of three telephones which were found on the Lady Mary after it was seized.  A satellite telephone located in the captain's cabin showed two calls on September 22, 2006 to a telephone number that Pelletier was using.  A telephone located on the bridge showed three calls, on September 24, 2006, September 26, 2006 and September 27, 2006, all to a telephone number that Pelletier was using.  Captain Donald Gordon's cell phone showed four calls to a telephone number that Pelletier was using.  The last call was made on September 29, 2006 at 3:25 a.m.

---

[4] At the hearing, the government asserted that when the Portuguese Navy seized the Lady Mary, the Lady Mary was probably heading toward Portuguese territory, according to the coordinates at that time and the direction in which the Lady Mary was taking.

7

M.  On August 24, 2007, the Portuguese authorities issued an arrest warrant for Pelletier on charges of trafficking in narcotic drugs.

The extradition request provides probable cause to believe that Pelletier committed the crime charged, trafficking in drugs.  The statement of Captain Donald Gordon directly implicates Pelletier in the drug smuggling venture.  Pelletier owned the boat, suggested the plan to Donald Gordon, and kept in contact with Donald Gordon as the Lady Mary received the drugs and traveled toward Portuguese waters.  Donald Gordon also provides a motive, *i.e.* both he and Pelletier were having financial problems.  The telephone records indicate that Pelletier kept track of the drug smuggling venture from Portugal, but when the Portuguese authorities seized the Lady Mary and the cocaine, Pelletier left Portugal suddenly, and before his scheduled hotel and airplane departures.

Furthermore, Pelletier cannot introduce evidence that conflicts with the evidence submitted by Portugal.  See *Hooker v. Klein*, 573 F.2d 1360, 1368-69 (9th Cir. 1978); *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981).  Pelletier's right to introduce evidence is limited to evidence which explains, rather than contradicts, Portugal's proof.  See *Chen Na-Yuet v. Hueston*, 734 F.Supp. 988, 995 (S.D. Fla. 1990) (Hoeveler, J.), *aff'd w/o op.*, 932 F.2d 977 (11th Cir. 1991); *accord Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981).

Therefore, Pelletier's contentions that Donald Gordon's statement 1) is facially incredible, 2) may not have been fully credited by the Portuguese Court, and 3) was not subject to cross-examination by someone representing Pelletier's interest (DE # 26 at 11-12 and fn. 1), are rejected as not within the scope of this proceeding.

Pelletier's contention that Donald Gordon's statement does not implicate Pelletier (DE # 26 at 12), is simply incorrect.

**Finally, Pelletier appears to contend that Donald Gordon's statement is incomplete, not completely translated, and frequently translated incorrectly (DE # 26 at 11, fn. 1). Pelletier could have provided his own translation of Donald Gordon's statement at the extradition hearing, but chose not to. Thus, since Pelletier has not provided any evidence in support of this contention, his argument on this point is rejected as speculative. Moreover, Donald Gordon's statement was recorded in English, and a CD containing the entire statement was provided to the Court as part of the extradition package.**

### III. The crime charged, trafficking in drugs, meets the dual criminality requirement.

The principle of dual criminality dictates that a fugitive may be extradited only if the acts constituting the offense are criminal in both the jurisdiction in which the fugitive is found and the jurisdiction to which the fugitive's extradition is sought, and ensures that the charged conduct is punishable as a felony in both the sending and the requesting state. An extradition court may look to federal law to determine whether dual criminality exists. *In re Extradition of Hurtado*, 2009 WL 1324215 at *2 (S.D. Fla. May 13, 2009).

The Portuguese crime of trafficking in drugs makes it illegal for any person to, *inter alia*, import cocaine into Portugal or possess cocaine with intent to distribute in Portugal.[5] Under United States law, it is also illegal for any person to import cocaine into the United States or to possess cocaine with intent to distribute in the United States.

---

[5] The Portuguese law in question, Article 21 provides, "any non-authorized person who . . . sells, distributes, purchases, transfers or receives on any terms, makes available to others, transports, imports, exports, dispatches in transit, or illicitly possesses" cocaine is guilty of an offense punishable by a term of 4 to 12 years imprisonment.

*See* 21 U.S.C. § 952(a) and 21 U.S.C. § 841(a)(1).  The statement of Donald Gordon establishes that Pelletier told him the plan, and that the plan was to receive the drugs on the high seas from one vessel to the Lady Mary, and then, while in Portuguese waters, transfer the drugs from the Lady Mary to another vessel.  These facts are sufficient to meet the dual criminality requirement.

The undersigned rejects Pelletier's argument that there was no violation of Portuguese law because there was no evidence of the ultimate destination of the cocaine (DE # 26 at 8).  Donald Gordon's statement makes clear that the cocaine was intended to enter Portuguese waters.  *See United States v. Montoya*, 782 F2d. 1554, 1555 (11th Cir. 1986) (upholding the defendant's conviction under 21 U.S.C. § 841 where the defendant possessed cocaine in the United States, but with the intent to distribute it in Canada).

The undersigned also rejects Pelletier's argument that there was no violation of Portuguese law because he never actually possessed the drugs, and could only be guilty of conspiracy, which is not a crime in Portugal (DE # 26 at 8).  Pelletier was not only a conspirator, he was a principal in the drug smuggling plot.  Pelletier owned the smuggling vessel.  Pelletier obtained a crew and a captain, Donald Gordon, for the Lady Mary.  Pelletier told Donald Gordon what the smuggling plan consisted of, and stayed in constant communication with Donald Gordon while the cocaine was aboard the Lady Mary.  After Donald Gordon told the crew what the drug smuggling plan was, Pelletier told Gordon to lock the telephones on the Lady Mary, so that the crew could not call off the boat.  Pelletier stayed in Portugal while the Lady Mary approached Portugal, and suddenly left Portugal when the Portuguese authorities seized the Lady Mary and the cocaine.

**IV. The documents contained in the extradition request were properly authenticated by the appropriate diplomatic officers and may properly be considered by the undersigned Magistrate Judge.**

A.  Pelletier initially contends that Article IX of the Treaty provides that while Portugal should have provided a duly authenticated copy of the warrant of arrest and the depositions upon which such warrant has been issued, none of the documents which Portugal submitted, including Donald Gordon's statement, has been sworn (DE # 26 at 14).  In response, the government points out that the treaty does not require sworn statements, and that the extradition request does include depositions taken as part of a judicial proceeding.  Moreover, the extradition request complies with the requirements of the relevant statutes, in that all documents are accompanied by a signed statement of authentication by the appropriate diplomatic officers (DE # 27 at 4).

Binding Eleventh Circuit precedent demonstrates that properly authenticated documents submitted by a requesting state may be considered by a magistrate judge regardless of whether the statements they contain are sworn or unsworn.  *See Afanasjev v. Hurlbut*, 418 F.3d 1159, 1165 (11th Cir. 2005); *Escobedo v. United States*, 623 F.2d 1098, 1102, n.10 (5th Cir. 1980).  *Accord Hurtado v. Holder*, 2010 WL 785331 at *4 (S.D. Fla. Feb. 26, 2010).  Pelletier does not contest that all documents contained in the extradition package are accompanied by a signed statement of authentication by the appropriate diplomatic officers.[6]

Pelletier misplaces his reliance on *In Matter of Extradition of Platko*, 213 F.Supp.2d 1229, 1237-40 (S.D. Cal. 2002), in which the examining Magistrate Judge found

---

[6] **Moreover, the extradition request contains the affidavit of one Antonio Inacio, an employee in the Portuguese Department of Criminal Investigation and Prosecution, which summarizes the evidence against Pelletier (Govt. Ex. 5 at 1-4).**

that, under the extradition treaty with the Czech Republic, only sworn statements could be considered to establish cause.  *Platko* is not binding on this Court.  In *Afanasjev v. Hurlbut*, 418 F.3d at 1164-65, the Eleventh Circuit, relying on 18 U.S.C. § 3190, held that an unsworn bill of indictment from Lithuania, which contained unsworn hearsay statements of victims and witnesses, but was properly certified by the appropriate American consular officer, was competent evidence to establish probable cause to extradite.  *Accord Escobedo v. United States*, 623 F.2d 1098, 1102, n.10 (5th Cir. 1980); *Hurtado v. Holder*, 2010 WL 785331 at *4 (S.D. Fla. Feb. 26, 2010).

Therefore, the undersigned Magistrate Judge may properly consider the documents contained in the extradition package to establish probable cause to extradite.

B.  Pelletier then contends that Portugal has failed to provide translations of the majority of the documents contained in the extradition package, as required by Article IX of the treaty (DE # 26 at 14).  The government responds that the United States has not relied on any of the untranslated documents in question to support the extradition request, only on the translated documents in the extradition request, and has only cited to the translated documents in its filings (DE # 27 at 4).

The undersigned Magistrate Judge finds that the United States has not relied on any of the untranslated documents in question to support the extradition request.  The undersigned further finds that the United States has only cited in its filings to the translated documents contained in the extradition request, and, therefore, Pelletier's challenge to the extradition request on this ground is without merit.

V.  Conclusion

Based on the foregoing, this matter is certified to the Secretary of State in order that a warrant may issue upon the requisition of the proper Portuguese authorities for

the surrender of Jacques Pelletier to serve the remainder of his sentence, according to the provisions of the Treaty between the United States and Portugal.

It is **ORDERED** that Jacques Pelletier be committed to the custody of the United States Marshal, or his authorized representative, to be confined in appropriate facilities and to remain there until he is surrendered to Portugal pursuant to applicable provisions of the Treaty and law.

It is **FURTHER ORDERED** that the United States Attorney for this judicial district shall forward a copy of this Certification and Order, together with a copy of all transcripts of proceedings and copies of documents received into evidence in this matter to the Secretary of State.

**DONE AND ORDERED** at Miami, Florida, on April 12, 2010.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

**Copies furnished via CM/ECF**
**to all counsel of record**